CITY OF CHARLESTON ex rel. ROBERT G. BRADY, R. P. SMITH, Appellants, v. O. W. McCUTCHEON and RICHARD LOGAN, Respondents.

CITY OF FREDERICKTOWN ex rel. ROBERT G. BRADY, R. P. SMITH, Appellants, v. VALLE MERCIER and L. A. MERCIER, Respondents.

CITY OF SIKESTON ex rel. ROBERT G. BRADY, R. P. SMITH, Appellants, v. W. R. McCUTCHEON and DUREE MEDLEY, Respondents, Nos. 41499, 41554 and 41591—227 S. W. (2d) 736.

Court en Banc, February 13, 1950.

Rehearing Denied, March 13, 1950.

158

*R. P. Smith* and *Robert G. Brady* for appellants.

*Bailey & Craig* for O. W. McCutcheon, Richard Logan, W. R. Mc-Cutcheon and Duree Medley, *Melvin Englehart* and *Finch & Finch* for Valle Mercier and L. A. Mercier, respondents.

160

*Oliver & Oliver, amicus curiae.*

162

 CONKLING, J.—Each of the appeals in these three cases presents to us the question of the constitutionality of the same statutes, R. S. Mo. 1939, Secs. 14958 to 14961, inclusive, Mo. R. S. A. Those statutes (among other things) required aisles three feet in width between the ends of the rows of seats and the outer side walls, in certain places of public amusement. Penalties for any violation were provided.

Robert G. Brady and R. P. Smith, the appellants in each of these cases are both plaintiffs, and attorneys. The three petitions, filed on December 29, 1948 and January 3 and 4, 1949, prayed penalties for each violation for the five years preceding the filing of each petition. In each respective petition it is alleged that the named municipality "is styled a plaintiff * * * as required by Sec. 14961 Mo. Rev. Stat. 1939", Mo. R. S. A., and that each respective city "has no other right, title or interest."

In each respective petition it is alleged that, for five years or more, the defendants therein named had owned or operated one or more theatres in the city therein named and had failed to comply with R. S. Mo. 1939, Sec. 14958, Mo. R. S. A. in that, in each such theatre so owned or operated, "there is no aisle whatsoever along the outward ends of the rows of seats nor around or along the ends of all rows of seats". These are qui tam actions. Each day upon which the provisions of the statute were not complied with carried a possible forfeiture of from $20 to $5,000, one-half thereof payable "to the person making the complaint", without proof that anyone was affected by noncompliance or that any one could have benefited by compliance. In the City of Charleston case (two theatres involved) plaintiffs pray a recovery of more than $18,000,000. In the City of Fredericktown case (one theatre) plaintiffs pray a recovery of more than $9,000,000 and in the City of Sikeston case (two theatres) a recovery of more than $18,000,000 is prayed. In each case plaintiffs pray also an order cancelling the license of each theatre, and enjoining any further performance therein.

To the separate petition in each case the defendants therein filed a motion to dismiss alleging the unconstitutionality of the statutes involved for reasons specifically therein stated. Each of the three motions to dismiss were sustained, each of the three petitions was dismissed and these appeals duly followed. In the Charleston and

Sikeston cases (then pending in the 28th Judicial Circuit) the circuit court dismissed the petitions and held that the statutes were unconstitutional because, among other reasons, they were local and special in character. In the City of Fredericktown case (then pending in the 27th Judicial Circuit) the circuit court dismissed the petition and held the statutes unconstitutional because, among other reasons, they were local and special in character.

The briefs of the respondent-defendants urge the unconstitutionality of the statutes for many other reasons also but, in the view we take of these statutes we need consider but one reason. It is our opinion that the statutes are local and special and therefore unconstitutional. That view and ruling will dispose of each of these three cases.

. These four sections of our statutes were enacted in 1877. See Laws Mo. 1877, pages 328 and 329. In the first section (14958.) it was required, among other things, that every place for public amusement have an aisle three feet in width ''to run along the outward ends of the said rows of seats, and also around or along the ends of all rows of seats''. Because no other violation of the statutes is alleged in any of the three petitions it is unnecessary to notice the other requirements of Sec. 14958. In Sec. 14959 it was required that all subsequently constructed places of public amusement conform to the requirements of Sec. 14958. In Sec. 14960 it was provided that no license should be given for any public amusement in any place not conforming to the various requirements laid down in Sec. 14958.

The last section (14961) was the important one and provided the penalties. For failure by the owner or operator of a place of public amusement to have a three foot aisle ''along the outward ends of said rows of seats'', (i. e., next to the side walls of the theatres) it was provided that the owner or operator should (1) forfeit his license; (2) pay a fine of not less than twenty dollars nor more than five thousand dollars for every act of noncompliance with any of the provisions of the three preceding sections, and for every violation of any of them; (3) ''to be recovered upon the complaint of *any* person in an action of debt in any court of competent jurisdiction *held in the town, village or city where the offense shall occur,* and in the name of such town, village, or city'' (emphasis ours). This section also provided that, ''One-half of the recovery in every case shall be paid to the person making the complaint, and the other half shall be paid to the treasurer of such town, village or city for the use and benefit of the public common schools thereof''.

Defendants contend the statutes are local and special in violation of Sec. 53 of Article IV of the Constitution of 1875 and of Sec. 40 of Article III of the Constitution of 1945.

 In an action brought to recover a statutory penalty the statute must be strictly and literally construed. State ex rel. Ashby

v. Cairo Bridge & Terminal Co., 340 Mo. 190, 100 S. W. (2d) 441. Penal provisions of a statute, or of a statute penal in nature are always strictly construed, and can be given no broader application than is warranted by its plain and unambiguous terms: McClaren v. G. S. Robins & Co., 349 Mo. 653, 162 S. W. (2d) 856. Certainly an unambiguous statute, penal in nature, neither by implication nor otherwise, can be construed to be something other than it was written to be.

The statute here considered provided for a recovery of the stated penalties only in a "court of competent jurisdiction held in the city, town or village where the offense shall occur". Thus there was created an inequality of burden on persons who might perform the same act. A violation of the statute, if it occurred in a town, village or city where the "court of competent jurisdiction" was not "held", or if the violation occurred outside a town, village or city where such court was "held", was not subject to the penalties. Thus an improper and unfair immunity was granted. The statute was therefore discriminatory. Such a classification of places of violations for which penalties were recoverable, i. e., upon the basis of whether a court of competent jurisdiction was held or not held in the town, village or city, was arbitrary, unreasonable and void. State ex rel. Transport Manufacturing & Equipment Co. v. Bates, et al., 359 Mo. 1002, 224 S. W. (2d) 996. The statute did not operate alike on all persons for the same violations, and did not operate and apply uniformly throughout the state. The fact that a violation was made an offense only when it occurred in a town, village or city (and then only if such court was held therein) is in and of itself sufficient to nullify the penalty section of the Act. Such penal statutes must operate uniformly everywhere in the state, in rural areas as well as within towns, villages and cities, and without regard to whether such court is held therein. This penalty section is local only and is void. State ex rel. McCaffrey v. Bailey, 308 Mo. 444, 272 S. W. 921. It is imperative that inequalities in the uniformity of operation of a statute be effected by the legislature, and not by judicial action in the guise of interpretation.

It may be true that in 1877, when this statute was enacted, such places of amusement as were then contemplated in this statute were always within towns, villages or cities. But that fact did not free the section providing the penalties from the unconstitutional infirmities it then and thereafter had. Now, however, all know that many theatres are wholly outside of any town, village or city, and along heavily travelled highways in suburban areas, and between towns along highways. Many more could and no doubt will be so located. In 1877, and in the seventy odd intervening years, courts

of such jurisdiction were not held in many towns and villages. We judicially notice •where courts were held.

The exception plainly made in this statute as ·to .offenses in places of amusement in towns, villages or cities where such courts were never held, and as to such offenses outside of a town, village or city was so plainly discriminatory, unreasonable, unnatural and arbitrary as to compel the conclusion that the penalty statute (Sec. 14961) was wholly void. State ex rel. Ashby v. Cairo Bridge & Terminal Co., supra, State v. Taylor, 351 Mo. 725, 173 S. W. (2d) 902, City of Springfield v. Smith, 322 Mo. 1129, 19 S. W. (2d) 1, Reals v. Courson, 349 Mo.•1193, 164 S. W. (2d) 306, Carson v. Baldwin, 346 Mo. 984, 144 S. W. (2d) 134.

Appellants' brief concedes that our above stated conclusion is correct, and admits that the statute "is in fact local and special", if, as we have above held "the statute be strictly and literally construed". But they contend we must construe the statute to carry out legislative intent. We shall later discuss the obvious legislative intention so plainly appearing in the statute itself.

We cannot, however, as appellants request, contort the plain words of the statute or re-write it to say, or to mean, "in any court ·of competent jurisdiction in the town, village or city where the offense shall occur", thus deleting entirely the word "held" as it in fact appears in the just above quoted portion of the statute after the word "jurisdiction" and before the word "in". Nor do we have the power, as. appellants suggest, to delete the word "in" which follows the word "held" and in lieu substitute the word "for", and thus rewrite the statute to read: "any court of competent jurisdiction held for the town, village or city". State ex inf. Collins v. St. L. & S. F. R. Co., 238 Mo. 605, 142 S. W. 279, Leibson v. Henry, 356 Mo. 953, 204 S. W. (2d) 310, 315. This is a penal statute. Even if the statute were not penal we could not accede to appellants' request and suggestion. To so rewrite this statute would be but judicial usurpation of the legislative function. That we cannot do. We cannot write a new law. We can only consider this one. Nor can we, by construction, amend the act the General Assembly originally wrote.

Urging us to delete from the statute the word "in" following the word "held" and to substitute for the word "in", the word "for", appellants seek to invoke the principle that the unconstitutionality of a part of a statute does not render the remainder invalid where enough remains after discarding the invalid part, to show legislative intent and to furnish means to effectuate it. They cite such cases as State ex rel. McDonald v. Lollis, 326 Mo. 644, 33 S. W. (2d) 98 and State ex rel. Randolph County v. Walden, 357 Mo. 167, 206 S. W. (2d) 979. . The facts of those cases quickly distinguish them.

166

In State at the relation of Transport Manufacturing & Equipment Co. v. Bates et al.; supra, this court recently considered the principle appellants seek to here invoke. In that case, as in this case, the statute was one calling for strict construction. That was a tax statute. This is a penal statute. In the last named case we said: "The fact that the residue of an act remaining after a portion has been declared invalid may be complete in and of itself is not always sufficient to sustain it. If the invalid portion is so connected with the residue of the statute as to furnish the consideration for the enactment of the residue and as to warrant the belief that they were intended as a whole and that the Legislature would not have passed the part remaining had it known the other part would be held invalid, then the entire act must fall". See also, State on inf. McKittrick v. Cameron, 342 Mo. 830, 117 S. W. (2d) 1078.

In the 1877 statute here considered there appears a clear legislative intent and purpose. It required the authorized action to be in the local court held in the municipality where the violation occurred and for the benefit of local schools. The local forum was required to be used for that purely local purpose. This local nature of the statute was expressed plainly in four different respects, (1) the action was required to be brought in a court of competent jurisdiction held in the town, village, or city where the offense occurred, (2) the action was required to be brought in the name of the town, village or city where the offense occurred, and in which suit was to be brought, (3) half of the fine recovered was required to be paid to the treasurer of such town, village· or city where the offense occurred, (4) for the benefit of the public common schools of the town, village or city where the offense occurred.

The clear intent of the legislature as gathered from the Act itself is, that for local municipal school purposes, the violation, the cause of action, the form of such action, the forum of recovery, the person to whom the penalties were required to be paid and the public purpose to which the penalties were to accrue, were all made local to the municipality. This is further made clear by the fact that in the statute (14961) violations were not made a misdemeanor, with a punishment of a jail sentence or a fine payable to the general public treasury only. Here an unconscionable daily fine up to $5,000 was recoverable, half to go to the local common public schools and half to go to the informer.

Therefore, it clearly appears that a portion, at least, of the consideration for the passage of the 1877 act was that local courts had to be used as an instrumentality to accrue financial support of the local public common schools of the municipality where a violation of any provision of Sec. 14958 occurred. With that as one purpose in mind, i. e., the welfare of the local common public schools, the General Assembly localized the violations to those occurring in such towns,

villages or cities, and made the local court the only forum for collection of the penalties. The legislative intent seems clear to us and we rule that the parts of this section of the Act (14961) are not separable. The statutory provision that the penalties were recoverable only in a court "held in the town, village or city where the offense shall occur" is an expression of legislative intent of the purely local character of the statute. We rule that the provision requiring the use of the local court is so connected in meaning and substance with the remainder of Sec. 14961 that the legislature would not have passed the statute without it. It follows that Sec. 14961 violated Sec. 53 of Article IV of the Constitution of 1875 and Sec. 40 of Article III of the Constitution of 1945, because it is a local and special law. Section 14961, therefore, was always unconstitutional and void.

It should be here noted that the above statutes (R. S. Mo. 1939, Secs. 14958 to 14961) were repealed by Senate Committee Substitute for Senate Bill No. 80 passed by the 65th General Assembly (which convened January 5, 1949), and which was approved by the Governor on June 17, 1949, and which became effective on October 14, 1949. This new act prescribes certain minimum construction requirements for all places of assembly for public amusement, buildings used to display motion pictures, etc., anywhere in the state, and provides that a violation thereof shall be a misdemeanor.

The judgment of the circuit court in each of these three cases is affirmed. It is so ordered. All concur.